UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

|  |  |
|---|---|
| PERFECTO HUITZIL, ROGELIO HUITZIL, FRANCISCO DIAZ, FRANCISCO DIAZ III, OBISPO MONTERO, JESUS ROJAS and SIXTO REYNOSO, *on behalf of themselves and all others similarly situated,* | Dkt. No.: |
|  | **COMPLAINT** |
|  | **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | **Collective Action and Class Action Complaint** |
| -against- |  |
| HAYCO CORP., ALEX HAY, and FRED HAY, |  |
| Defendants. |  |

-------------------------------------------------------------------X

Plaintiffs Perfecto Huitzil, Rogelio Hutizil, Francisco Diaz., Francisco Diaz III, Obispo Montero, Jesus Rojas and Sixto Reynoso (collectively, "Plaintiffs"), by and through their attorneys, Joseph & Norinsberg, LLC, allege as follows:

## NATURE OF CASE

1.      Plaintiffs bring this action on behalf of themselves and all others similarly situated for Defendants' systemic and continuous violations of: (i) the overtime provisions of the FLSA, as amended, 29 U.S.C. §§ 201 *et seq*.; (ii) the overtime provisions of the New York Labor Law ("NYLL") and Comp. Codes R. & Regs Tit. 12, § 142-2.2 ("NYCCRR"); (iii) the wage deductions provisions of  NYLL § 193 and NYCCRR § 2.10(a); (iv) the requirement that employers furnish employees with a written statement at the time of hiring containing specific categories of information under the NYLL § 195(1), as codified as the New York Wage Theft Prevention Act (the "NYWTPA"); (v) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); and

1

(vi) the anti-retaliation provisions of the NYLL § 215(1); and any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Plaintiffs are superintendents who have worked for properties owned and//or managed by Defendants at various times between 2000 and the present. Throughout the course of their employment, Plaintiffs regularly worked as many as seven days a week, and well over 40 hours each week – including the requirement that they be on-call 24 hours a day, seven days a week to deal with any issues in their assigned buildings – without receiving overtime compensation as required by law.

3.      In addition to work performed as superintendents, Plaintiffs were required to perform handyman assignments, outside of their regularly scheduled work hours, consisting of nonstandard repairs and renovations on Defendants' properties.

4.      By intentionally blurring the line between the various occupations, and by willfully failing to pay Plaintiffs overtime wages, Defendants have eliminated significant operating costs and have unlawfully retained wages that Defendants owed to Plaintiffs.

5.      Plaintiffs bring this action on behalf of themselves and all others similarly situated, both current and former superintendents and handymen, pursuant to the Fair Labor Standards Act ("FLSA"), and specifically the collective action provision of the FLSA, to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiffs, and others similarly situated superintendents and handymen, of their lawful wages.

6.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former superintendents and handymen of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of the NYLL.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

8.      The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

## DEMAND FOR A JURY TRIAL

10.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

11.     Plaintiffs Perfecto Huitzil ("Mr. P. Huitzil"), Rogelio Hutizil ("Mr. R. Huitzil"), Francisco Diaz ("Mr. Diaz"), Francisco Diaz III ("Mr. Diaz III"), Obispo Montero ("Mr. Montero"), Jesus Rojas ("Mr. Rojas") and Sixto Reynoso ("Mr. Reynoso"), are individuals who, at all times relevant to this Complaint, have been residents of the City and State of New York.

12.     At all times relevant to this Complaint, Plaintiffs were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL § 190(2).

*Hayco Corp.*

13.     At all times relevant to this action, Defendant Hayco Corp. ("Hayco"), was and is, a domestic business corporation organized and existing under the laws of the state of New York,

with its principal place of business at 377 Fifth Avenue, Third Floor, in the County, City and State of New York.

14.     At all times relevant to this action, Hayco was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Hayco to the FLSA's overtime requirements.

15.     Hayco is a real estate acquisition company with a portfolio comprising of at least twenty-five (25) residential buildings located throughout New York, including but not limited to:

      i.      1920 Osborne Place, Bronx, New York;

      ii.     2523 Aqueduct Avenue East, Bronx New York;

      iii.    2525 Aqueduct Avenue East, Bronx New York;

      iv.     2533 Aqueduct Avenue East Bronx New York;

      v.      1 The Boulevard, New Rochelle, New York;

      vi.     32 Coligni Ave, New Rochelle, New York;

      vii.    1820 Main Street, New Rochelle, New York;

      viii.   18 May Street, New Rochelle, New York;

      ix.     45 Mitchell Place, White Plains, New York;

      x.      502 Audubon Avenue, New York, New York;

      xi.     560 Audubon Avenue, New York, New York;

      xii.    1916 Palmer Ave., Larchmont, New York; and

      xiii.   508 West 141st Street, Manhattan.

16.     At all times herein, Plaintiffs worked as superintendents and handymen for residential properties owned and/or managed by Hayco.

17.   Further, Plaintiffs' paystubs confirm that Hayco is the entity that issued compensation to Plaintiffs during the relevant time period.

***Alex Hay and Fred Hay***

18.   At all times hereinafter mentioned, Defendants Alex Hay ("A. Hay") and Fred Hay ("F. Hay") were and are chief operating officers and/or managing members of Hayco and/or the associated entities, which are partners, subsidiaries, parent companies, shells, and/or alter-egos of Hayco.

19.   At all relevant times herein, A. Hay and F. Hay actively participated in the day-to-day operations of Hayco and were "employer(s)" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are, therefore, jointly and severally liable with the corporate Defendant listed herein.

20.   Specifically, at all relevant times hereto, A. Hay and F. Hay were Plaintiffs' supervisors and/or had supervisory authority over Plaintiffs.

21.   The above-referenced corporate and individual Defendants are hereinafter referred to collectively as "Defendants."

22.   At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiffs' employment, in that Defendants had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment. Accordingly, Defendants were the "employer(s)" of Plaintiffs within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

## COLLECTIVE ACTION ALLEGATIONS

23.    Plaintiffs bring their FLSA claims on behalf of themselves and all others similarly situated persons who work, or have worked, for Defendants and their associated entities as superintendents and handymen, during the relevant statutory period, and who did not receive overtime pay at the mandatory statutory rate for all hours worked in excess of forty (40) hours, in a workweek (hereinafter, the "FLSA Collective Class").

24.    There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and an opportunity to join.

25.    The total number of persons who are eligible to join the FLSA Collective Action identified above, including both current and  former employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.  Upon information and belief there are at least forty (40) FLSA members, and there could be significantly more.

26.    The precise number of FLSA collective action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

27.    Plaintiffs bring this action on behalf of themselves and on behalf all others similarly situated class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include:

> All superintendents and handymen, employed by Defendants, during the relevant statutory period who: (1) worked in excess of forty hours per week without receiving overtime compensation at the mandatory statutory rate; (2) were not issued accurate and/or complete pay stubs/wage statements on

each payday containing the information required by N.Y. Lab. Law § 195(3); and/or (3) were not issued accurate and/or complete pay notices upon hiring and annually thereafter, containing the information required by N.Y. Lab. Law § 195(1) (hereinafter, the "New York Class").

28.  *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate that there are at least forty (40) Class members who reside and work in New York.  The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

29.  *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendants failed to pay Plaintiffs, the New York Class members wages for each hour worked;

    b.  Whether Defendants failed to pay Plaintiffs and the New York Class the statutorily-mandated rate of pay of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week;

    c.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class with a written statement upon hiring, and annually, as required by NYLL § 195(1);

    d.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

    e.  Whether Defendants took unlawful deductions from Plaintiffs' and the New York Class' wages, by requiring them to pay the cost of tools, supplies, and cellular phones which were required for the maintenance of the buildings;

    f.  Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

    g.  Whether Defendants' violations were willful.

30.  *Typicality:* Plaintiffs' claims are typical of those of the Rule 23 Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants'

common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 Class members, as detailed above.  Further, as part of their scheme to circumvent overtime provisions of the NYLL Defendants required Plaintiffs and New York Class to perform handymen assignments, outside of their regularly scheduled work hours, consisting of nonstandard repairs and renovations and did not pay them lawful wages for these handyman assignments.

31.   *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 New York Class. Furthermore, Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

32.   *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, inter alia, it is economically unfeasible for the Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

33.   The case will be manageable as a class action because Defendants should have payroll systems that will allow the wage-and-hour facts and damages issues in the case to be determined with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

34.   Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## CLASSWIDE FACTUAL ALLEGATIONS

35.   Plaintiffs bring FLSA and NYLL claims on behalf of themselves and all others similarly situated Plaintiffs ("Class Members") employed by Defendants who were denied lawful wages.

36.   Defendant Hayco is a real estate company specializing in multi-residential rentals. Upon information and belief, Defendants jointly own and/or manage over twenty-five (25) residential buildings located throughout New York.

37.   Upon information and belief, Defendants have employed more than forty (40) superintendents and handymen during the statutory period.

38.   As superintendents, the job duties of Plaintiffs and of the Class Members included, inter alia: (i) repairs including painting and roofing; (ii) fumigating the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

39.   Although the Plaintiffs and Class Members were required to work more than 40 hours per week, the Defendants systematically failed to pay Plaintiffs Class Members overtime wages at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of 40 per work week.

40.   Significantly, Plaintiffs were routinely assigned handyman "side jobs" which frequently required work in the evenings and on weekends – frequently in other buildings owned and operated by the Defendants. However, Plaintiffs and Class Members were never compensated at the overtime rate for these "side jobs".

41.     At all relevant times, the Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to the Plaintiffs. In fact, Defendants have systematically underreported the number of hours worked by Plaintiffs and Class Members, and effectively omitted their overtime hours from any payroll records, in order to evade their obligations under the FLSA and the NYLL.

42.     Additionally, the Defendants failed to provide Plaintiffs, and all similarly situated class members, with accurate wage statements with each payment, as required by the NYWTPA. Likewise, Defendants failed to provide Plaintiffs, and all similarly situated class members, with accurate wage notices upon hiring, and annually thereafter, as required by the NYWTPA.

43.     Upon information and belief, Defendants' unlawful conduct as described herein is pursuant to an unlawful and deliberate practice of attempting to minimize labor costs by violating the FLSA and NYLL.

44.     Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

## INDIVIDUAL ALLEGATIONS

### Perfecto Huitzil ("Mr. P. Huitzil.")

45.     Plaintiff Mr. P. Huitzil was employed as a building superintendent.  He worked for a property owned and/or managed by Defendants located at 1 The Boulevard, New Rochelle, New York, from on or about March 2003 to May 5, 2019.

46.     During the course of his employment, Mr. P. Huitzil's resided in a basement apartment in the building located at 1 The Boulevard. Defendants required Mr. P. Huitzil to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

47.     As a superintendent, Mr. P. Huitzil's duties included, inter alia: (i) minor repairs including painting and roofing; (ii) fumigating the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

48.     Additionally, Mr. P. Huitzil was required to perform handyman assignments, outside of his regularly scheduled hours, consisting of nonstandard repairs and renovations in the buildings owned and/or managed by Defendants, including inter alia:

   i. 18 May Street, New Rochelle, New York;

   ii. 32 Coligni Ave, New Rochelle, New York;

   iii. 1920 Osborne PL, Bronx, New York;

   iv. 2525 Aqueduct Ave, Bronx, New York;

   v. 560 Audubon Avenue, New York, New York;

   vi. 2533 Aqueduct Ave, Bronx, New York;

   vii. 1916 Palmer Ave, Larchmont, New York; and

   viii. 45 Mitchell Pl, White Plains, New York.

49.     Defendants regularly directed Mr. P. Huitzil to perform handyman "side jobs" in these buildings and frequently asked him to perform and complete these assignments outside of his scheduled work hours. Some of these assignments were given to Mr. P. Huitzil in a "work order" form, but many assignments were simply communicated to him over the phone.

50.     In fact, at least 50% of Mr. P. Huitzil's work hours were spent on completing assignments in these other buildings, owned and operated by Defendants.

51.     As a result, Mr. P. Huitzil's regularly worked seven days per week, and worked an average of fifty (50) to sixty (60) hours per week.

52.     Defendants did not utilize any time tracking device or system to keep track of the hours Mr. P. Huitzil worked.  Instead they created a fiction that Mr. P. Huitzil only worked thirty-five (35) hours per week, and paid him a flat rate for thirty-five hours each week, regardless of how many hours he *actually* worked.

53.     Thus, Defendants failed to pay Mr. P. Huitzil for some of his working hours, and also failed to pay him overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

54.     Further, Mr. P. Huitzil was required to spend his own money on work-related expenses, including inter alia: (i) cellular telephone expenses; (ii) supplying his own tools and supplies to complete mandated work; and (iii) paying laborers to assist him with completing mandated work.   Occasionally, Defendants would reimburse Mr. P. Huitzil for some of these expenses.

55.     Throughout the duration of his employment, Defendants failed to provide Mr. P. Huitzil with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. P. Huitzil and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

56.     Mr. P. Huitzil has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

57.     Mr. P. Huitzil has been designated as the class representatives for the FLSA Collective Action and the New York Class.

58.

**Rogelio Huitzil ("Mr. R. Huitzil")**

59.     Plaintiff Mr. R. Huitzil was employed as a building superintendent at a building owned and/or managed by Defendants, located at 1920 Osborne Place, Bronx, New York, from on or about January of 2000 to September 16, 2016.

60.     During the course of his employment, Mr. R. Huitzil's resided in a basement apartment in the building located at 1920 Osborne. Defendants required Mr. R. Huitzil to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

61.     As a superintendent, Mr. R. Huitzil's duties included, inter alia: (i) minor repairs including painting and roofing; (ii) fumigating the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

62.     Additionally, Mr. R. Huitzil was required to perform handyman assignments, outside of his regularly scheduled hours, consisting of nonstandard repairs and renovations in the building and in other buildings owned and/or managed by Defendants, including inter alia:

      i.     1920 Osborne Place, Bronx, New York;

      ii.     2523 Aqueduct Avenue East, Bronx New York;

      iii.     2525 Aqueduct Avenue East, Bronx New York;

      iv.     2533 Aqueduct Avenue East Bronx New York;

      v.     1 The Boulevard, New Rochelle, New York;

      vi.     32 Coligni Ave, New Rochelle, New York;

      vii.     1820 Main Street, New Rochelle, New York;

      viii.     18 May Street, New Rochelle, New York;

    ix.    45 Mitchell Place, White Plains, New York;

    x.    502 Audubon Avenue, New York, New York;

    xi.    560 Audubon Avenue, New York, New York; and

    xii.    1916 Palmer Ave., Larchmont, New York,

63.    As a result, Mr. R. Huitzil worked an average of sixty-five (65) hours per week.

64.    Defendants did not utilize any time tracking device or system to keep track of the hours Mr. R. Huitzil worked.  Instead they created a fiction that Mr. P. Huitzil only worked forty (40) hours per week, and paid him a flat rate for forty hours each week, regardless of how many hours he *actually* worked.

65.    Thus, Defendants unlawfully and systematically failed to pay Mr. R. Huitzil overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

66.    On multiple occasions, Mr. R. Huitzil complained to property manager, Alfonso De Jesus about unpaid wages and work expenses.  In response, De Jesus would lie to Mr. R. Huitzil by promising to pay him on a later date, but he never provided Plaintiff with the back-wages he was entitled to as a matter of law.

67.    Further, Mr. R. Huitzil was required to spend his own money on work-related expenses, including inter alia: (i) cellular telephone expenses; and (ii) supplying his own tools and supplies to complete mandated work.

68.    Additionally, throughout the duration of his employment, Defendants failed to provide Mr. R. Huitzil with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. R. Huitzil and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

69.     Mr. R. Huitzil has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

70.     Mr. R. Huitzil has been designated as the class representatives for the FLSA Collective Action and the New York Class.

### Francisco Diaz ("Diaz")

71.     Plaintiff Mr. Diaz worked for Defendants as a superintendent from on or about November 2004, to on or about May 2015. Subsequently, on or about September of 2018 Defendants rehired Mr. Diaz as a superintendent for three properties owned and/or managed by Defendants, located at:[1]

      i.    32 Coligni Ave, New Rochelle, New York;

      ii.    1916 Palmer Ave, Larchmont, New York; and

      iii.    2122 Boston Post Road, Larchmont, New York.

72.     As a superintendent, Mr. Diaz' duties include, inter alia: (i) minor repairs including painting and roofing; (ii) fumigation of the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

73.     Additionally, Mr. Diaz was routinely required to perform handyman "side jobs" outside his regularly scheduled work hours, consisting of nonstandard repairs and renovations in his assigned buildings.  Mr. Diaz would often ride his bike to other buildings to complete work assignments in those buildings.

---

[1] By way of background, Mr. Diaz took a break for several years, during which time, his son, Mr. Diaz, III, assumed his duties and responsibilities as set forth below. On or about September 2018, Mr. Diaz resumed his prior duties as a superintendent, and he still holds that position today.

74.     For instance, Mr. Diaz worked two to three times a week in the building located at 2122 Boston Post Road, Larchmont, New York, since that building did not have a superintendent living on the premises.

75.     In fact, at least 50% of Mr. P. Huitzil's work hours were spent on completing assignments in these other buildings, owned and operated by Defendants.

76.     As a result, Mr. Diaz worked an average of sixty-five (65) hours per week.

77.     Defendants did not utilize any time tracking device or system to keep track of the hours Mr. Diaz worked.  Instead they created a fiction that Mr. Diaz only worked forty (40) hours per week, and paid him a flat rate for forty hours each week, regardless of how many hours he *actually* worked.

78.     Thus, Defendants unlawfully and systematically failed to pay Mr. Diaz overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

79.     Further, Mr. Diaz was required to spend his own money on work-related expenses, including inter alia: (i) cellular telephone expenses; (ii) supplying his own tools and supplies to complete mandated work; and (iii) paying laborers to assist him with completing mandated work.

80.     Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Diaz with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. Diaz and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

81.     Mr. Diaz has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

82.     Mr. Diaz has been designated as the class representatives for the FLSA Collective Action and the New York Class.

*Defendants Retaliate Against Mr. Diaz*
*For Filing a Lawsuit Against Defendants*

83.     On or about November 21, 2019 Mr. Diaz and a group of Plaintiffs filed a lawsuit against Defendants, seeking back they were owed as a matter of law, pursuant to the NYLL and FLSA. See Huitzil et al v. Hayco Corp. et al., Docket No. 19-cv-10819-PGG (S.D.N.Y.).

84.     Subsequently, on December 4, 2019, the Plaintiffs voluntarily dismissed their complaint without prejudice, pursuant to FRCP 41(a)(1)(A)(i).

85.     Thereafter, the Defendants began retaliating against Mr. Diaz. His manager refused to talk to him or to give him assignments. Instead, the Defendants hired an outside "handyman" to do tasks he was previously assigned to. The Defendants also froze Mr. Diaz out of matters pertaining to his buildings.

86.     Defendants' attitude toward Mr. Diaz changes drastically after he filed suit against them. They effectively "punished" him for speaking up about their unlawful pay practices, to discourage anyone else from reporting unlawful conduct.

### Francisco Diaz III ("Mr. Diaz III")

87.     Plaintiff Mr. Diaz III was employed as a building superintendent, at a property owned and/or managed by Defendants, located at 32 Coligni Ave, New Rochelle, New York, from on or about July of 2015 to on or about August 2017.

88.     During the course of his employment, Mr. Diaz III resided in a basement in the building located at 32 Coligni Ave. Defendants required Mr. Diaz III to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

89.     As a superintendent, Mr. Diaz III's duties included, inter alia: (i) minor repairs including painting and roofing; (ii) fumigating the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi)

tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

90.     Mr. Diaz performed his superintendent duties by working early morning and late afternoon shifts during the week, and full days on the weekend, averaging forty-five (45) hours, per week.

91.     Additionally, since the building served as a popular off-campus residence for College of New Rochelle students, there was a high turnover rental rate during the months of June and August that required speedy cleanouts, repairs or renovations.  During this peak period, Mr. worked an average of seventy-five (75) hours per week.

92.     Defendants did not utilize any time tracking device or system to keep track of the hours Mr. Diaz III worked.  Instead they paid him a flat rate each week, regardless of how many hours he *actually* worked.

93.     Thus, Defendants unlawfully and systematically failed to pay Mr. Diaz III overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

94.     Further, Mr. Diaz III was required to spend his own money on work-related expenses, including inter alia: (i) cellular telephone expenses; (ii) supplying his own tools and supplies to complete mandated work; and (iii) paying laborers to assist him with completing mandated work.

95.     Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Diaz III with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. Diaz III and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

96.     Mr. Diaz III has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

97.     Mr. Diaz III has been designated as the class representatives for the New York Class.

**Defendants Retaliate Against Mr. Diaz III**
**and Unlawfully Terminate His Employment**

98.     In the summer of 2018, Mr. Diaz III complained to his supervisor, Alfonso De Jesus, that he was owed wages for the long hours that he worked each week, without adequate compensation.

99.     On or about June of 2018, Mr. Diaz III followed up on his complaint to find out if De Jesus would provide him with the wages he was entitled to as a matter of law.

100.     Within a week, Mr. Diaz III received a joint request from Hayco's principal, A. Hay and property manager, De Jesus, asking him to waive his overtime rights – a request that is blatantly unlawful. Moreover, as per the request, Mr. Diaz III was asked to agree to a new policy whereby employees would only receive overtime pay only if they had received prior authorization for the overtime work.

101.     In the two weeks that followed, De Jesus persistently demanded that Mr. Diaz III sign the document. However, Mr. Diaz III adamantly refused to do so. In fact, Mr. Diaz III submitted a written response in which he explained that he did not fully understand what he was being asked to sign, and therefore wished to meet in person with Hay so that they could discuss. Mr. Diaz III understood that Defendants were blaming *him* for never having reported his overtime hours, when this had never been the company's policy. Thus, Mr. Diaz III very much wanted a meeting to discuss the matter further. This meeting never happened.

102.    Instead, shortly thereafter, Mr. Diaz III received his first write-up and was subsequently unlawfully terminated for blatantly pretextual reasons. The temporal proximity between these events gives rise to an inference of retaliation for having engaged in protected activity.

## Obispo Montero ("Mr. Montero")

103.    Plaintiff Mr. Montero was employed as a building superintendent for Defendants. From on or about December of 2013 to on or about July of 2016. Mr. Montero worked for two properties owned and/or managed by Defendants:

      i.    2525 Aqueduct, Bronx, New York; and

     ii.    2533 Aqueduct, Bronx, New York.

104.    Mr. Montero resided in a basement apartment in the building located at 2533 Aqueduct, Bronx, New York. Defendants required Mr. Montero to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

105.    As a superintendent, Montero's duties included, inter alia: (i) minor repairs including painting and roofing; (ii) fumigating the apartments; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) carpentry work; (ix) cleaning inside and outside the buildings; and (x) addressing tenants' concerns.

106.    Additionally, Defendants regularly assigned Mr. Montero handyman work consisting of nonstandard repairs and renovations in his assigned buildings which cumulatively had eighty-seven (87) units. Notably, Mr. Montero was required to perform and complete these assignments outside of his scheduled work hours.

107.    As a result, Mr. Montero worked an average of sixty-four (64) hours per week.

108.    Defendants did not utilize any time tracking device or system to keep track of the hours Mr. Montero worked.  Instead they paid him a flat rate each week, regardless of how many hours he *actually* worked.

109.    Thus, Defendants unlawfully and systematically failed to pay Mr. Montero overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

110.    Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Montero with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. Montero and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

111.    Mr. Montero has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

112.    Mr. Montero has been designated as one the class representatives for the FLSA Collective Action and the New York Class, and he is willing and able to serve in this capacity.

**Jesus Rojas**

113.    Plaintiff Mr. Rojas was employed as a building superintendent for Defendants, from January 2013 until on or about July 2016.

114.    Mr. Rojas resided in a basement apartment in a building located at 3515 Rochambeau Avenue, Bronx, NY. Defendants required Mr. Rojas to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

115.    As a superintendent, Mr. Rojas' duties included, inter alia: (i) minor repairs including painting and roofing; (ii) mopping and sweeping; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi)

tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (xi) addressing tenants' concerns.

116.    Additionally, Defendants regularly assigned Mr. Rojas handyman work consisting of nonstandard repairs and renovations in his assigned building. Notably, Mr. Rojas was required to perform and complete these assignments outside of his scheduled work hours.

117.    Mr. Rojas also routinely worked several hours on Saturday and Sunday, to sort and take out the garbage,

118.    As a result, Mr. Rojas worked an average of sixty (60) hours per week.

119.    Defendants did not utilize any time tracking device or system to keep track of the hours Mr. Rojas worked. Instead they paid him a flat rate each week, regardless of how many hours he *actually* worked.

120.    Thus, Defendants unlawfully and systematically failed to pay Mr. Rojas overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

121.    Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Rojas with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. Rojas and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

122.    Mr. Rojas has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

123.    Mr. Rojas has been designated as a class representative for the FLSA Collective Action and the New York Class, and he is willing and able to serve in this capacity.

**Sixto Reynoso**

124.    Plaintiff Mr. Reynoso was employed as a building superintendent for Defendants, from July 2014 until on or about October 2017.

125.    Mr. Reynoso resided in a basement apartment in a building located at 508 West 141st Street #Bsmt, Manhattan, New York. Defendants required Mr. Reynoso to be on-call to deal with any situation that arose in the building twenty-four (24) hours a day, seven (7) days a week.

126.    As a superintendent, Mr. Reynoso's duties included, inter alia: (i) minor repairs including painting and roofing; (ii) mopping and sweeping; (iii) minor electrical work; (iv) maintaining building boilers; (v) checking hallways for cleanliness and maintenance issues; (vi) tiling; (vii) minor plumbing; (viii) minor carpentry work; (ix) cleaning inside and outside the buildings; and (xi) addressing tenants' concerns.

127.    Additionally, Defendants regularly assigned Mr. Reynoso handyman work consisting of nonstandard repairs and renovations in his assigned building, and in other buildings, owned and operated by Defendants, including but not limited to:

      i.    2523 Aqueduct Avenue East, Bronx New York;

      ii.    2525 Aqueduct Avenue East, Bronx New York;

      iii.    2533 Aqueduct Avenue East Bronx New York;

      iv.    502 Audubon Avenue, New York, New York

      v.    560 Audubon Avenue, New York, New York; and

128.    Mr. Reynoso's supervisor, Ricardo Willie, would assign him work in these buildings, and frequently, Mr. Reynoso was required to complete these assignments outside of his scheduled work hours.

129.    As a result, Mr. Reynoso worked seven days per work, and worked an average of sixty-five (65) hours per week.

130.    Defendants did not utilize any time tracking device or system to keep track of the hours Mr. Reynoso worked. Instead they paid him a flat rate each week, regardless of how many hours he *actually* worked.

131.    Thus, Defendants unlawfully and systematically failed to pay Mr. Reynoso overtime compensation at the mandatory statutory rate for all hours worked in excess of 40 in a work week.

132.    Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Reynoso with the required written wage notice upon hiring, and annually thereafter. Likewise, Defendants failed to provide Mr. Reynoso and the required wage statements, containing accurate information about his wages, in violation of the NYWTPA.

133.    Mr. Reynoso has spoken to other superintendents who are employed by Defendants, and they advised him that, they too, were denied lawful overtime wages.

134.    Mr. Reynoso has been designated as one of the class representatives for the FLSA Collective Action and the New York Class, and he is willing and able to serve in this capacity.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
**(Unpaid Overtime under the FLSA, 29 U.S.C. §§ 201 – 219)**

135.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

136.    Defendants violated the rights of Plaintiffs the FLSA Collective Class Members by failing to pay overtime compensation at the statutory rate of one-and-one-half times the regular

rate of pay for each hour worked in excess of forty (40) per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

137.    Defendants' failure to pay Plaintiffs and the FLSA Collective Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

138.    Defendants deliberately obfuscated Plaintiffs' and Class Members' hours and attempted to circumvent overtime provisions of the FLSA, through mandatory handyman assignments consisting of nonstandard repairs and renovations set to be performed outside of their regularly scheduled hours. Accordingly, Defendants intentionally avoided paying Plaintiffs and Class Members overtime wages.

139.    Defendants are liable to Plaintiffs and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unpaid Overtime under the NYLL § 160 et seq. and the NYCCRR)**

140.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

141.    NYLL § 160 and 12 NYCCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

142.    Plaintiffs and Class Members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half times their regular rate of pay.

143.    These practices were in violation of the NYLL and NYCCRR.

144.     These practices were willful and lasted for the duration of all relevant time periods.

145.     Defendants deliberately obfuscated Plaintiffs' and Class Members' hours and attempted to circumvent overtime provisions of the NYLL and NYCCRR, through mandatory handyman assignments consisting of nonstandard repairs and renovations set to be performed outside of their regularly scheduled hours. Accordingly, Defendants purposely avoided paying Plaintiffs and Class Members overtime wages.

146.     By reason of the foregoing, Defendants are liable to Plaintiffs Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (Illegal Deductions, New York Labor Law, Article 19 § 193 12 N.Y.C.R.R. § 2.10(a))

147.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

148.     In violation of NYLL § 193, Defendants unlawfully deducted wages from Plaintiffs and Class Members, by requiring superintendents to spend their own money on work-related expenses which were required for the performance and completion of mandated work.

149.     By reason of the foregoing, Defendants are liable to Plaintiffs and Class Members for reimbursement of unlawful deductions, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Provide Annual Wage Notices in Violation of the NYLL § 195(1))

150.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

151.   Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

152.   Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a).

153.   NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

154.   During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

155.   Based on the foregoing, Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Failure to Provide Wage Statements in Violation of the NYLL § 195(3))**

156.   Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

157.   Pursuant to NYLL § 195(3), every employer is required to:

> Furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address

27

and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

158.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with wage statements meeting the requirements set forth above.

159.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

160.    During the course of Plaintiffs' and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

161.    The paystubs provided to Plaintiffs and to Class Members were grossly inadequate since they failed to account for any overtime hours. Therefore, these paystubs cannot satisfy the requirements of NYLL § 195(3).

162.    Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS BY PLAINTIFFS FRANCISCO DIAZ AND FRANCISCO DIAZ III
**(Retaliation under the NYLL § 215(1))**

163.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

164.    New York Labor Law § 215(1) provides that "No employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer...that the employer has violated any provision of this chapter [the Labor Law]."

165.    Defendants engaged in a systematic policy of willfully ignoring all requests for lawful wages, and then retaliating against employees who made such complaints.

166.    As stated at length above, Mr. Diaz III had made a complaint to Defendants for their failure to compensate him in violation of the NYLL.  Shortly after his complaint, Defendants demanded that Mr. Diaz III execute a waiver to the overtime hours he worked.  Mr. Diaz III refused to waive his rights and asked for a meeting to discuss the issue.

167.    As a result of the foregoing, Mr. Diaz III was written up on pretextual grounds and subsequently terminated.

168.    The temporal proximity between Mr. Diaz III's complaint, his refusal to execute the waiver, and his termination gives rise to an inference of retaliation.

169.    Defendants also retaliated against Mr. Diaz.

170.    In fact, as soon as Mr. Diaz commenced a lawsuit against Defendants in November 2019, they began freezing him out of his superintendent position. All new assignments were given to a new handyman, and as a result, Mr. Diaz, decisions were made in his building, without his knowledge or consent.

171.    By reason of the foregoing, Defendants are liable to Mr. Diaz and Mr. Diaz III in an amount to be determined at trial, plus costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray

for the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c. Designating Perfecto Huitzil, Rogelio Hutizil, Francisco Diaz., Francisco Diaz III., and Obispo Montero as Class Representatives;

d. Designating Joseph & Norinsberg, LLC as Class Counsel;

e. Granting judgment in favor of Plaintiffs, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of underpaid wages in accordance to the statutorily-mandated minimum rate of hourly pay for each hour worked;

f. Granting judgment in favor of Plaintiffs, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding reimbursement for unlawful deductions;

g. Granting judgment in favor of Plaintiffs, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half times their regular rate of pay, multiplied by all hours worked in excess of the prescribed number of hours per week;

h. Awarding liquidated damages to Plaintiff, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

i. Awarding all other available compensatory damages to Plaintiff, FLSA Collective Action members, and the New York Class, including, inter alia, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

k. Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

l. Awarding such further relief as this court deems just and proper.

Dated:   New York, New York
             April 9, 2020

                                              Respectfully submitted,

                                              JOSEPH & NORINSBERG, LLC

                                              By: _____
                                              Chaya M. Gourarie, Esq.
                                              225 Broadway, Suite 2700
                                              New York, New York 10007
                                              Tel: (212) 227-5700
                                              Fax: (212) 406-6890
                                              Email: chaya@norinsberglaw.com
                                              *Attorneys for Plaintiffs and Putative Class*

TO:   Gregg A. Waxman, Esq.
         THE WAXMAN LAW FIRM
         1051 Port Washington Blvd
         Port Washington, New York 11050
         Tel: (516) 468-6888
         Fax: (516) 468-6889
         Email: gregg@waxmanfirm.com
         *Attorneys for Defendants*

31